UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUOC ANH NGUYEN,<br><br>                              Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of Department of Homeland Security; PAMELA JO BONDI, Attorney General; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director of San Diego Field Office; CHRISTOPHER J. LAROSE, Warden of Otay Mesa Detention Center,<br><br>                              Respondents. | Case No.: 25cv2792-LL-VET<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Pending before the Court is Petitioner Quoc Anh Nguyen's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the Petition for Writ of Habeas Corpus, **DENIES AS MOOT** the Motion for Temporary Restraining Order, and **ORDERS** Petitioner's immediate release from custody.

1

## I. BACKGROUND

Petitioner is a citizen of Vietnam who came to the United States with his family as refugees in 1982. ECF No. 1 ("Nguyen Decl.") ¶ 1. They soon became lawful permanent residents. *Id*. He was convicted of several crimes afterwards, including for check fraud, burglary, grand theft, and drug possession. *See id*. ¶ 2; ECF No. 7-2 ("I-213") at 24. He was ordered removed by an immigration judge, spending several months in detention while ICE attempted to remove him. Nguyen Decl. ¶ 2. When Vietnam failed to issue him a travel document, he was released on supervision in 2011. *Id*. ¶ 5. On April 14, 2025, ICE arrested him at his annual supervisory check-in. *Id*. ¶ 6. Petitioner swears that they did so without telling him "what changed to make [his] removal more likely," an "informal interview," or a chance "to explain why [he] should not be re-detained." *Id*. ¶ 8. These failings, Petitioner argues, violated ICE's own regulations which state that:

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*See* 8 C.F.R. §§ 241.13(i)(2)–(3), 241.4(l).

Therefore, on October 20, 2025, Petitioner sought his release though a writ of habeas corpus on three grounds: (1) that his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and 8 U.S.C. § 1231; (2) that he was denied an explanation, interview, and chance to respond when he was re-detained, violating ICE's rules and his constitutional due process rights; and (3) that ICE may seek to remove him to a third country without notice and an opportunity to be heard. ECF No. 1 ("Compl.") at 9–20. Petitioner moved for appointed counsel and a temporary restraining order as well. ECF No. 3. The Court has since granted in part his requests, appointing Federal Defenders of San Diego, Inc. to represent him and enjoining the Government from removing Petitioner to a third country.

ECF No. 4. The Cout finds the second claim (due process) to be dispositive, and therefore declines to rule on claims one (*Zadvydas*) and three (removal to a third country).

## II. DISCUSSION

### A. Jurisdiction

Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3). In doing so, we carry out the "historic purpose of the writ," namely "to relieve detention by executive authorities without judicial trial." *Zadvydas*, 533 U.S. at 699. The Government argues that this Court does not have jurisdiction to decide this case. ECF No. 7 ("Opp.") at 4 (citing 8 U.S.C. § 1252(g)). But the Supreme Court has "rejected" the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). Had Petitioner sought to challenge the Government's decision to execute his removal order, it would indeed bar this Court's review. But because he only contests his detention resulting from violations of the Government's mandatory duties under certain statutes, regulations, and the Constitution, the Court has jurisdiction to determine the lawfulness of Petitioner's detention. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [§ 1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

### B. Due Process

The Cout finds that the Government has violated its own regulations under § 241.13(i) and § 241.4(l). First, ICE must determine that the detainee is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances." § 241.13(i)(2). The Government asserts that it has assessed that changed circumstances will result in Petitioner's removal to Vietnam in the reasonably foreseeable future. "While that may [perhaps] be the case now, § 241.13(i)(2) requires that this determination is made before the removable alien has had his release revoked." *See Tran v. Noem*, No. 25-cv-

2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025). The record does not show that a changed-circumstances determination was made at or before Petitioner's re-detention on April 14, 2025. Even if ICE assessed the likelihood of Petitioner's removal before revoking his release, it would not have been "on account of" changed circumstances. The Government, in fact, did not even start Petitioner's "process for obtaining information for a travel document application" to Vietnam until June 11, 2025—nearly two months after re-detaining him. *See* ECF No. 7-1 ("ICE Decl.") ¶ 8. With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Government has violated its own rule under § 241.13(i)(2). *See id*. (finding the same).

Second, an alien must "be notified of the reasons for revocation of his or her release" that are actually "stated in the notification." § 241.13(i)(3); *see Tran*, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). The Government suggests that it need not have provided anything more than its DHS I-213 form. However, the Government is silent on whether it gave Petitioner a copy of this form at or reasonably close to his arrest. In addition, the I-213 does not state what Petitioner's arresting officers told him. *See* I-213. At most, such a notation "memorializes that [Petitioner] was advised that he was arrested based on his previous order of removal but does not state that he was advised of the reasons supporting the revocation of release," if any. *Tran*, 2025 WL 3005347, at *3. This bare-bones explanation does not contain reasons for the revocation of Petitioner's release, thus it does not satisfy the "the due-process notification requirement of § 241.13(i)(3)." *See id*. (finding the same). Nor does Respondents' conclusory Notice of Revocation of Release Letter dated October 21, 2025—which, in any event, was drafted and delivered more than six months after Petitioner's April 14, 2025 re-detention. *See* ECF No. 7-2 ("Notice") at 27.

Finally, after re-detaining an alien who was out on supervision, ICE must "promptly" conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation." § 241.13(i)(3). Apart from ICE not having reasons to re-detain

him based on changed circumstances, Petitioner also declares that they did not tell him "what changed to make [his] removal more likely" or afford him the requisite "informal interview" as a chance "to explain why [he] should not be re-detained." Nguyen Decl. ¶ 8; *see also* Opp. at 15 (conceding that it "is unclear whether Petitioner's conversations with ICE officers to date amount to an informal interview"). These failings, too, violated Petitioner's due process rights. *See Tran*, 2025 WL 3005347, at *3 (finding the same); *see also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

The Government does not dispute that it has failed to follow its own rules for re-detainment, instead arguing that "even assuming the agency's compliance with the relevant regulations fell short," it is not enough to release Petitioner back on supervision pending his deportation to Vietnam in the reasonably foreseeable future. *See* Opp. at 11. However, courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). This is so even when, unlike here, the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment. *See id.* at *1–6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); *Tran*, 2025 WL 3005347, at *1–4 (same).

Because Respondents failed to comply with § 241.13(i) and § 241.4(l) when they revoked Petitioner's supervised release, issuing a writ to reinstate that release is warranted. This will be "without prejudice" to the remedies that Respondents may otherwise have, namely their readiness to deport Petitioner to Vietnam in the coming months. *See Tran*, 2025 WL 3005347, at *3. "Respondents may exercise their discretion to allow him to say goodbye to his family, settle his affairs, and report for his removal." *See id.*

### III. CONCLUSION

Accordingly, the Court **GRANTS** the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and **DENIES AS MOOT** the Motion for Temporary Restraining Order. The Government shall immediately release Petitioner from custody on the April 14, 2025 revocation of release and arrest. Petitioner shall comply with all conditions that were in effect before his April 14, 2025 re-detainment. By **November 7, 2025**, at **11:00 a.m.**, the parties must also file a joint status report to confirm that Petitioner has been released, after which the Clerk will close this case.

**IT IS SO ORDERED.**

Dated: November 6, 2025

_____
Honorable Linda Lopez
United States District Judge